UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WILLIAM R. POINDEXTER,          )
                                )    No. CV-10-0351-CI
          Plaintiff,            )
                                )    ORDER DENYING PLAINTIFF'S
v.                              )    MOTION FOR SUMMARY JUDGMENT
                                )    AND GRANTING DEFENDANT'S
MICHAEL J. ASTRUE, Commissioner )    MOTION FOR SUMMARY JUDGMENT
of Social Security,             )
                                )
          Defendant.            )
                                )

     BEFORE THE COURT are cross-Motions for Summary Judgment.  (ECF
No. 12, 17.)  Attorney Lora Lee Stover represents William Poindexter
(Plaintiff); Special Assistant United States Attorney Terrye Shea
represents the Commissioner of Social Security (Defendant).   The
parties have consented to proceed before a magistrate judge.  (ECF
No. 6.)  After reviewing the administrative record and briefs filed
by the parties, the court **DENIES** Plaintiff's Motion for Summary
Judgment, and directs entry of judgment for Defendant.

                            **JURISDICTION**

     Plaintiff protectively filed for Supplemental Security Income
(SSI) on March 20, 2008.  He alleged disability due to problems with
a blood clot and his right calf, anemia, depression, anti-social
problems, and a concussion, with an onset date of December 1, 2007.
(Tr. 183.)  His claim was denied initially and on reconsideration.
Plaintiff requested a hearing before an administrative law judge

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

1   (ALJ), which was held on October 27, 2009, before ALJ Marie

2   Palachuk. (Tr. 47-84.)  Plaintiff, who was represented by counsel,

3   and vocational expert Robert Aslan (VE) also testified. *Id.*  The ALJ

4   denied benefits on November 6, 2009, and the Appeals Council denied

5   review. (Tr. 25-38, 1-5.)  The instant matter is before this court

6   pursuant to 42 U.S.C. § 405(g).

7                        **STANDARD OF REVIEW**

8       In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

9   court set out the standard of review:

10          The decision of the Commissioner may be reversed only
         if it is not supported by substantial evidence or if it is
11       based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
         1097 (9th Cir. 1999). Substantial evidence is defined as
12       being more than a mere scintilla, but less than a
         preponderance. *Id.* at 1098. Put another way, substantial
13       evidence is such relevant evidence as a reasonable mind
         might accept as adequate to support a conclusion.
14       *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
         evidence is susceptible to more than one rational
15       interpretation, the court may not substitute its judgment
         for that of the Commissioner. *Tackett*, 180 F.3d at 1097;
16       *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595,
         599 (9th Cir. 1999).

17

18          The ALJ is responsible for determining credibility,
         resolving conflicts in medical testimony, and resolving
19       ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
         Cir. 1995). The ALJ's determinations of law are reviewed
20       *de novo*, although deference is owed to a reasonable
         construction of the applicable statutes. *McNatt v. Apfel*,
21       201 F.3d 1084, 1087 (9th Cir. 2000).

22      It is the role of the trier of fact, not this court, to resolve

23  conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence

24  supports more than one rational interpretation, the court may not

25  substitute its judgment for that of the Commissioner. *Tackett*, 180

26  F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

27  Nevertheless, a decision supported by substantial evidence will

28

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

1  still be set aside if the proper legal standards were not applied in

2  weighing the evidence and making the decision.  *Brawner v. Secretary*

3  *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If

4  there  is  substantial  evidence  to  support  the  administrative

5  findings, or if there is conflicting evidence that will support a

6  finding of either disability or non-disability, the finding of the

7  Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-

8  1230 (9th Cir. 1987).

9                    **SEQUENTIAL EVALUATION PROCESS**

10      The  Commissioner  has  established  a  five-step  sequential

11  evaluation process for determining whether a person is disabled.  20

12  C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S.

13  137, 140-42 (1987).  In steps one through four, the burden of proof

14  rests  upon  the  claimant  to  establish  a  prima  facie  case  of

15  entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d

16  920,  921  (9th  Cir.  1971).   This  burden  is  met  once  a  claimant

17  establishes  that  a  medically  determinable  physical  or  mental

18  impairment prevents him from engaging in his previous occupation.

19  20  C.F.R.  §§  404.1520(a),  416.920(a).   "This  requires  the

20  presentation of 'complete and detailed objective medical reports of

21  his  condition  from  licensed  medical  processionals.'"  *Meanel v.*

22  *Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999)(citation omitted).

23      If  a  claimant  cannot  do  his  past  relevant  work,  the  ALJ

24  proceeds to step five, and the burden shifts to the Commissioner to

25  show that (1) the claimant can make an adjustment to other work; and

26  (2) specific jobs exist in the national economy which claimant can

27  perform.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v.*

28

1  *Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

2  **STATEMENT OF THE CASE**

3      The facts of the case are set forth in detail in the transcript
4  of proceedings and are briefly summarized here.  Plaintiff was 37
5  years old on the alleged onset date. (Tr. 36.)  He testified he was
6  unmarried and lived alone in an apartment. (Tr. 63.) He reported
7  attending school through the ninth grade, at which time he dropped
8  out  due  to  incarcerations.  He  testified  he  attended  special
9  education  in  elementary  and  middle  school. (Tr. 53, 237-38.)
10 Plaintiff testified he had taken three adult level tests towards
11 obtaining a high-school equivalency diploma. (Tr. 52.)  Plaintiff
12 reported past work experience as a moving van worker, a laborer, and
13 roofing and drywall worker. (Tr. 184,.)  He also had experience in
14 fiberglass laminating. (Tr. 76.)

15 **ADMINISTRATIVE DECISION**

16     At step one of the sequential evaluation process, the ALJ found
17 Plaintiff  had  not  engaged  in  substantial  gainful  activity  since
18 April 24, 2007, the application date.[1] (Tr. 27.)  At step two, she
19 found  Plaintiff  had  severe  impairments  of  "peripheral  arterial
20 disease/deep vein thrombosis, ulcerative colitis, possible Crohn's
21 disease, borderline intellectual function." (*Id.*)  She found the
22 following conditions did not cause more than a minimal limitation in
23 Plaintiff's ability to work and, thus, were non-severe: depression,

24  _____

25      [1] Under the Social Security regulations, if a claimant meets
26 requirements for eligibility, SSI benefits are not payable until the
27 month following the month the application was filed.  20 C.F.R.
28 § 416.335.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

anti-social disorder and polysubstance abuse in reported remission.
(Tr. 28.) At step three, the ALJ made detail findings and concluded
Plaintiff's impairments or combination of impairments did not meet
or equal an impairment listed in 20 C.F.R. Part 404, Subpart P,
Appendix 1 (Listings). (Tr. 28-31.)  Specifically, she considered
Listing   4.12   (Peripheral   Arterial   Disease);   Listing   5.06
(Inflammatory Bowel Disease); Listing 12.05 (Mental Retardation);
Listing 12.08 (Personality Disorder) and Listing 12.09 (Substance
Addiction).  (Tr. 29-31.)

At step four, the ALJ determined Plaintiff had the residual
functional capacity (RFC) for light level work activities with the
following physical and mental non-exertional limitations:

> [H]e has the unlimited ability to push and pull, can only
> occasionally climb ladders, ropes and scaffolds and must
> avoid even moderate exposure to hazards, such as
> unprotected heights and machinery.  He is able to learn
> and perform simple work related tasks although his
> concentration, persistence and pace may be slowed on more
> complex tasks due to the need for extra instruction.  The
> claimant is also able to interact with coworkers and the
> general public on a superficial level, but is able to
> adapt to only routine changes in the work setting.

(Tr. 32.)  In discussing the RFC determination, the ALJ found
Plaintiff's subjective complaints were not entirely credible.  (Tr.
32-34.)  Based on the RFC assessed and the VE's testimony, the ALJ
found Plaintiff could no longer perform his past relevant work.
(Tr. 19.)  Proceeding to step five, she found there were other jobs
in significant numbers Plaintiff could perform.   The ALJ concluded
Plaintiff had not been disabled since the application date through
the date of her decision and, thus, was ineligible for SSI benefits.
(Tr. 36-38.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff identifies the following errors: 1) at step two the ALJ failed to find diagnosed anti-social personality disorder and depression were not severe and erred in finding "possible Crohn's Disease"; (2) at step three, she failed to find Plaintiff was disabled under Listing 12.05(C); (3) she failed to properly reject the opinions of medical providers; and (4) she improperly assessed Plaintiff's RFC.  (ECF No. 13 at 15-16, 12-13, 17-18.)

**DISCUSSION**

**A.    Step Two: Severe Mental Impairments and Crohn's Disease**

Plaintiff argues the ALJ erred at step two when she "did not find that Plaintiff has a condition under listing 12.08."  (ECF No. 13 at 15, *citing* Tr. 30.)  However, this is a misstatement of the ALJ's step three finding that Listing 12.08 "is not met."  (Tr. 30.)  As discussed below in detail, a Listing is met at step three when medical evidence establishes the criteria listing in the Regulation.  Once a Listing and the duration[2] requirement are met, disability is established and the sequential evaluation ends.  *Sullivan v. Zebley,* 493 U.S. 521, 525 (1990).  Here, at step two, the ALJ properly considered psychological diagnoses by acceptable medical sources and found Plaintiff's anti-social personality disorder was non-severe.  (Tr. 28.)

---

[2] For an impairment to be disabling, it must be expected to result in death or have persisted for a continuous period of 12 months.  20 C.F.R. § 416.909.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe," or "disabling," as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair v. Bowen*, 885 F.2d 597, 603 (9th cir. 1989); *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). To establish severity, the evidence must show the diagnosed condition significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

Here, the ALJ identified anti-social personality disorder, depression, and substance abuse in partial remission as non-severe medically determinable impairments because the record indicates these impairments imposed no more than minimal limitation on Plaintiff's ability to perform work-related activities. (Tr. 28.) As properly found by the ALJ, neither Plaintiff's testimony nor the medical evidence indicates significant work-related limitations due to mental impairments. (Tr. 28.) For example, the record supports the ALJ's finding that there is no evidence to indicate Plaintiff sought treatment or further diagnosis for anti-social personality disorder during the claimed disability period (*Id.*). Even assuming the evidence did indicate the diagnosed personality disorder was severe, as defined by the Regulations, failure to identify it as such at step two is harmless because the ALJ considered mental impairments in steps three through five and specifically addressed anti-social disorder symptoms by limiting Plaintiff to superficial contact with the general public and coworkers at step four. (Tr. 32.) *Shineski v. Sanders*, 556 U.S. 396, 409-10 (2009)(burden of

showing harm from error in administrative proceedings falls on plaintiff); *see also Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)(error harmless where no prejudice shown); *Johnson v. Shalala*, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (error is harmless if correction would not alter result).

Likewise, the ALJ's finding that Plaintiff's depression was considered mild in April 2008, is supported by the record. Plaintiff points to no evidence after that time to indicate he was diagnosed with or sought treatment for depression after that time. (Tr. 28.) As Plaintiff concedes, the only depression diagnosis prior to 2008 was when Plaintiff was a child. (ECF No. 13 at 16.) Plaintiff makes no showing that this diagnosis would be relevant to this claim. He also indicates he was treated for depression as an adolescent after his mother died while he was incarcerated. (Tr. 255-56.) The record shows that in 2000, mental health therapist, Betty McQuirk, acknowledged the situational aspect of Plaintiff's depression and indicated she expected him to improve with counseling and medication.[3] (*Id.*) Plaintiff points to no evidence that this situational depression met the duration requirement for severity or caused more than minimal limitations during the relevant period. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909).

Regarding Crohn's disease, at step two the ALJ found the evidence establishes "possible" Crohn's disease as a severe impairment. (Tr. 27.) The ALJ's qualification of "possible" is

---

[3] As a mental health therapist, Ms. McQuirk is not qualified to establish a diagnosis of depression. 20 C.F.R. § 416.913(d).

consistent with varying diagnoses reflected in medical records from emergency rooms and Plaintiff's treating physician.  (Tr. 28, 556, 757.)  As noted by the ALJ, Plaintiff testified he has had "stomach problems" his entire life and underwent surgery for the condition. (Tr. 32, 58.)  Careful review of medical records from treating surgeon M. Shane McNevin, M.D., indicates surgery in March 2009 was for "indeterminate colitis," a condition also referred to as "Crohn's colitis" by Dr. McNevin in June 2009.  (Tr. 757, 760.) Plaintiff offers no explanation how the ALJ's characterization of Plaintiff's colon problems at step two as "possible Crohn's disease" is inconsistent with the entire medical record or prejudiced him in these proceedings.  The ALJ's step two description of Plaintiff's colon impairment as "possible Crohn's disease" is reasonable and not reversible error.  Plaintiff's step two arguments are without merit.

**B.   Step Three:  Listing 12.05C.**

Plaintiff argues the ALJ erred in finding Listing 12.05C was not met.  He contends the Introductory Paragraph to the Listing was not properly considered in step three findings and the record establishes the Listing requirements.  (ECF No. 13 at 12-13.)

The Commissioner has promulgated a "Listing of Impairments" that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." *Lester v. Chater,* 81 F.3d 821, 828 (9th Cir. 1995).  If a claimant's impairment does not meet the criteria specified in the Listings, he or she is still disabled if the impairment equals a listed impairment. 20 C.F.R. § 416.920(d).  If a claimant has more than one impairment, the

Commissioner must determine whether the combination of impairments is medically equal to any listed impairment.   20 C.F.R. § 416.926(a).  Under Listing 12.05C, disability is established if the following criteria is met:

> *Mental Retardation*:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

The ALJ did not err in finding Plaintiff did not meet or medically equal this criteria.   She discussed in detail the requirements of each Listing and referenced specific evidence in the record to support her step three determination.   She concluded Listing 12.05 is not met because the level of severity was not established by the evidence.  (Tr. 29.)

Although Plaintiff, without citing to the record, contends evidence establishes a verbal and full scale IQ of 69 prior to the age of 22,  (ECF NO. 13 at 13), *de novo* review of the record shows this argument is without merit.   The record shows Plaintiff was tested by Spokane Public Schools in 1986 by an evaluator identified as Stephen Shafer, School Psychologist.[4]  (Tr. 358.)   Mr. Shafer

---

[4]   Under the Regulations, a licensed or certified school psychologist is an acceptable medical source . 20 C.F.R. § 416.913

reported test scores of Verbal IQ (V/IQ) 69, Performance IQ (P/IQ) 72 and Full Scale IQ (FS/IQ) 69. (Tr. 35, 358-59.) The ALJ gave specific and legitimate reasons for rejecting the 69 IQ scores. She found the low IQ scores were not supported by Plaintiff's testimony that he was in the process of obtaining his GED by taking adult education classes. (Tr. 35, 63-64.) She also found the low IQ scores are not supported by other medical evidence in the record. (Tr. 34-35.) This reason is supported by IQ scores reported in 1981 by the school district and referenced by Mr. Shafer in his 1986 report. The 1981 IQ testing indicated Plaintiff scored a V/IQ of 74, P/IQ of 78, and FS/IQ of 74. (Tr. 200, 355, 359, 480.) Significantly, Mr. Shafer reported:

> The reviewer [Mr. Shafer] is quick to note that the [1986] verbal, performance, and full scale scores are lower than they were in 1981. Two contributing factors may be present. 1) A Full Battery was not given on either the Verbal or the Performance sub-tests. Since those scores had to be pro-rated, the overall impact on the outcome can only be guessed at this time. It should be noted too that while there is a difference in the scores, the actual numbers are not statistically significant.

(Tr. 359.) Mr. Shafer's statement fully explains the inconsistency between the 69 IQ score and the rest of the intelligence test

(a)(1). Mr. Shafer's report gives no indication that he is either licensed or certified; therefore, the ALJ reasonably found the evidence did not establish Mr. Shafer was an acceptable medical source. Even assuming Mr. Shafer is certified to establish intellectual functioning, the ALJ gave other valid reasons for discounting his test scores. Therefore, any erroneous conclusion regarding Mr. Shafer's qualifications is harmless. *Carmickle*, 533 F.3d 1155, 1164 (9th Cir. 2008).

results.    His  explanation  is  not  contradicted  by  other  IQ  test results  or  mental  health  examinations  in  the  record.    For  example, in   October   2000,   mental   health   professionals   and   examining psychiatrist Verne Cressy, M.D., at Eastern State Hospital concluded Plaintiff  did  not  have  mental  defects  or  disease  and  was  capable  of assisting  in  his  criminal  defense.    (Tr.  194,  200.)    In  2008, examining  psychologist  Dr.  Rosekrans  reported  a  full  scale  IQ  test score  of  72,  and  opined  Plaintiff  does  not  exhibit  impairments  in adaptive  functioning  that  would  support  a  diagnosis  of  mental retardation.    (Tr.  480-81.)  Supporting  documentation  indicates  a verbal  IQ  of  71  and  a  performance  IQ  of  77.    (Tr.  482.)    This evidence  supports  the  weight  given  by  the  ALJ  to  the  1986  report scores.  *See Warre v. Commissioner of Social Sec. Admin.,* 439 F.3d 1001, n.3 (9th Cir. 2006).

Plaintiff  neither  identifies  significant  limitations  supported by  the  record  that  were  not  considered  by  the  ALJ,  nor  does  he present  a  theory  as  to  how  his  non-severe  mental  impairments  equal a  disability  under  a  Listing;  therefore,  he  has  not  met  his  burden at  step  three.  *Johnson v. Barnhart,* 390 F.3d 1067, 1070 (8th Cir. 2004).    Plaintiff  did  not  meet  the  burden  of  proof  to  establish  the Listing  12.05(C)  medical  criteria,  and  the  ALJ's  step  three  findings are  supported  by  substantial  evidence  in  the  entire  record. *Sullivan,* 493 U.S. at 530-33 (burden  is  on  the  claimant  to  show  that his  impairment  meets  all  of  the  specified  medical  criteria  for  a Listing,  or  present  medical  findings  equal  in  severity  to  all  the criteria  for  the  one  most  similar  listed  impairment).

## C.   RFC Determination

Plaintiff  offers  the  conclusory  argument  that  the  ALJ's  RFC

determination is not supported by the record because medical opinions were not properly evaluated. (ECF No. 13 at 17-18.) Plaintiff asserts the ALJ "improperly rejected" opinions from a clinic nurse practitioner and Drs. McNevin, Goff, Kester, and Rosekrans. However, he fails to explain what opinions were rejected or how alleged errors prejudiced him. (*Id.* at 18.) Therefore, his argument is unpersuasive. *Shineski*, 556 U.S. at 409-10. However, a claimant's RFC is not a "medical issue" under the Regulations; it is an administrative finding based on all relevant evidence in the record, not just medical evidence. *SSR* 96-5p (*Medical Source Opinions on Issues Reserved to the Commissioner); see also SSR* 96-8p (*Assessing Residual Functional Capacity*). The final determination of a claimant's ability to perform work is the province of the ALJ, and no special significance is to be given to a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. § 416.927(e); *SSR* 96-5p.

Review of the record shows the ALJ adequately explained the little weight given nurse practitioner Jose Pares-Avila's opinion that Plaintiff was capable of only sedentary work. (Tr. 36.) The ALJ properly found the provider had never examined Plaintiff and his conclusion regarding Plaintiff's limitations was not consistent with the opinions of Plaintiff's treating physician. (*Id*.) This is a specific and "germane" reason for rejecting a non-examining opinion from a medical nurse practitioner. 20 C.F.R. § 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *SSR* 06-03p.

The record also shows that Dr. McNevin, Plaintiff's treating surgeon, noted Plaintiff's Crohn's disease "appears under good

control," and opined the disease would not limit him in his activities. He specifically recommended against certifying Plaintiff as disabled. (Tr. 760.) Plaintiff does not explain how this treating opinion conflicts with or should be given less weight than the opinions of Dr. Goff regarding treatment and limitations caused by Plaintiff's digestive disease.

In addition to giving significant weight to Dr. McNevin's treating physician opinions, the ALJ gave weight to Dr. Rosekrans' examining psychologist opinion that Plaintiff's IQ and memory deficits would not preclude employment, but they would affect his ability to learn job skills. (Tr. 34.) Dr. Rosekrans opined Plaintiff's prison history would be an impediment to finding work, but he opined unequivocally that Plaintiff was not mentally retarded. (Tr. 481.) ) These opinions are consistent with the non-examining opinion of Eugene Kester, M.D., who opined Plaintiff was not disabled due to mental impairments. (Tr. 34, 476-93, 481.) Plaintiff offers no cogent explanation how these medical opinions were improperly evaluated.

Considering the medical record in its entirety, as well as Plaintiff's credible testimony, the ALJ appropriately found Plaintiff could work at a light exertional level. (*See, e.g.,* Tr. 61-64, 480.)[5] Non-exertional limitations to accommodate Plaintiff's

---

[5] Plaintiff reported to Dr. Rosekrans that he was able to care for himself, had no problems with activities of daily living, and left his former job for reasons not related to his physical or mental impairments. (Tr. 34, 480.) He also testified that he was not taking pain medication and his medical condition seemed to be

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

low IQ, limited fund of knowledge, and difficulties in social functioning identified by Dr. Rosekrans (based on objective test results) are also properly incorporated in the RFC determination. (Tr. 32, 481.) Because the ALJ's reasoning is a rational interpretation of the record in its entirety and supported by substantial evidence, her RFC determination is affirmed.

### CONCLUSION

The ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **DENIED;**

2.    Defendant's Motion for Summary Judgment **(ECF No. 17)** is **GRANTED;**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  The file shall be closed and judgment entered for Defendant.

DATED May 7, 2012.


_____
          S/ CYNTHIA IMBROGNO
      UNITED STATES MAGISTRATE JUDGE

improving.  (Tr. 61-64.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15